```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON


HERBERT SPAULDING, III,

        Plaintiff,


v.                                Civil Action No. 2:05-cv-00460

JO ANNE B. BARNHART,
Commissioner of Social
Security,

        Defendant.
```

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Herbert Spaulding, III (hereinafter referred to as "Claimant"), filed an application for SSI on November 12, 2003, alleging disability as of June 21, 2003, due to a head injury,

degenerative bone disease of the spine, diabetes, blood clots, and a limited education. (Tr. at 25; 74-6.) The claim was denied initially and upon reconsideration. (Tr. at 51-2, 53-7, 58-9, 60-2.) On April 1, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 63.) The hearing was held on February 28, 2005 before the Honorable Steven Slahta. (Tr. at 194-227.) By decision dated March 30, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 30-7.) The ALJ's decision became the final decision of the Commissioner on May 13, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On June 6, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2005). If an individual is found "not disabled" at any

step, further inquiry is unnecessary.  Id. § 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 416.920(f) (2005).  The Commissioner must show two things:  (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v.

3

Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 31; Finding No. 1, tr. at 36.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of closed head injury, history of deep vein thrombosis, hypertension, diabetes mellitus, lumbar degenerative disc disease, and obesity. (Tr. at 32; Finding No. 2, tr. at 36.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 32; Finding No. 3, tr. at 36.) The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations. (Tr. at 35; Finding No. 10, tr. at 37.) As a result, Claimant cannot return to his past relevant work. (Tr. at 35; Finding No. 6, tr. at 36.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as an inspector and a security monitor which exist in significant numbers in the national economy. (Tr. at 35; Finding No. 11, tr. at 37.) On this basis, benefits were denied. (Tr. at 36; Finding No. 12, tr. at 37.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial

evidence.  In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was 42 years old at the time of the administrative hearing.  (Tr. at 196.) He has a tenth grade education.  (Tr. at 222.)  In the past, he worked as a floor sander/installer, a shop foreman for a sign company, and an electrician's assistant.  (Tr. at 222.)

5

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

On June 22, 2003, Claimant was admitted to Cabell Huntington Hospital following a motor vehicle accident.  Claimant was an unrestrained passenger in a vehicle traveling approximately 45-50 miles per hour.  (Tr. at 119.)  He suffered a short loss of consciousness.  X-rays showed fluid in Claimant's left mastoid, questionable basilar skull fracture and small subarachnoid hemorrhage. (Tr. at 119-20.) Neurosurgeon D. Weinsweig, M.D. found no focal neurological deficits and intact sensation.  (Tr. at 126.) Otolaryngologist Joseph B. Toma, M.D. detected likely sensorineural hearing loss in Claimant's left ear.  (Tr. at 127-8.)

Claimant was monitored and treated conservatively.  During his two-day stay at the hospital, examiners discovered Claimant's diabetes mellitus, for which follow-up treatment was recommended. Claimant was discharged in stable condition.  (Tr. at 120.) He was given ear drops and advised to follow up with the trauma physician, Dr. Arya; and with Drs. Weinsweig and Toma after discharge.  (Tr. at 119.)  He was also instructed to follow up with Dr. Smith, an internal medicine doctor.  Id.  The record does not reflect that Claimant made any such follow up appointments.

On September 16, 2003, Claimant was admitted to Cabell

6

Huntington Hospital again due to shortness of breath and left-sided shoulder pain which arose as he was chopping wood. (Tr. at 131.) Claimant's only medication at that time was glyburine. (Tr. at 131.) X-rays revealed an acute pulmonary embolism involving the interlobar artery and bibasilar pneumonia. (Tr. at 129.) Claimant remained in the hospital for seven (7) days, during which time he was medically managed. Upon discharge, Claimant was directed to follow up with Linda L. Kessinger, M.D., at Harts Clinic. (Tr. at 130.)

Dr. Kessinger began treating Claimant on September 30, 2003 for resolution of his pneumonia and blood clots. (Tr. at 157-61.) Claimant continued to take Coumadin for blood clots. (Tr. at 161.) He described continuing headaches. Claimant said that he did not go to a doctor. He indicated that he needed to get back to work financially, but that the physician in the hospital said he could not work and should get disability. (Tr. at 161.)

Dr. Kessinger treated Claimant through November 11, 2003 for possible bronchitis/pneumonia, persistent headaches, and anxiety/depression. (Tr. at 157-60.) The records reflect that Claimant lacked money to buy Coumadin and that he was advised to get his medicines through indigent programs. (Tr. at 157.)

Internal and pulmonary medicine specialist Pathom Thavaradhara, M.D. examined Claimant on January 15, 2004 at the agency's request. (Tr. at 141-6.) Claimant reported occasional

sharp pain across his chest, occasional headaches, and occasional numbness in his sacral area. (Tr. at 141-2.) However, he was able to walk about a mile, climb three flights of stairs, and lift and carry 50 pounds. (Tr. at 142.)

Upon examination, Claimant had limited range of motion in his lumbar spine, but had normal posture and gait. Examination of his back, neurological examination, and an x-ray of his lumbosacral spine were all unremarkable. (Tr. at 143.) Claimant had significant hypertension, but apparently was not taking his medication. His diabetes was also poorly controlled.

Dr. Thavaradhara opined that Claimant was not capable of returning to work at that time due to these multiple medical problems. He opined that Claimant needed to lose weight, resume his blood pressure medication, and get his diabetes under control. Dr. Thavaradhara indicated that thereafter, Claimant would be a candidate for rehabilitation and medical treatment, commenting, "I believe he should be productive after all his medical problems are under control." (Tr. at 143.)

On February 3, 2004, a state agency medical source completed a Physical Residual Functional Capacity Assessment form. (Tr. at 147-54.) He opined that Claimant could perform a full range of heavy work. The form was reviewed and its conclusions affirmed by Fulvio R. Franyutti, M.D. on March 16, 2004. (Tr. at 154.)

Claimant returned to Dr. Kessinger for treatment on March 29,

2004, stating that he had not continued his follow-up treatment with her due to a short time in jail for being disrespectful to a judge at a hearing. (Tr. at 156.) This took place in Florida. (Tr. at 218.) Claimant was not taking any of his prescribed medications, and his blood sugar was 252. (Tr. at 156.) Dr. Kessinger recommended that Claimant resume Glucophage and Coumadin, and that he request assistance from the office patient advocate to secure medications through indigent programs. She advised Claimant to decrease salt in his diet to control his hypertension, and offered him another trial of Zoloft to manage his anxiety/depression. Claimant reported that he had "no income at all" to purchase medications. (Tr. at 156.)

On May 27, 2004, Claimant visited Dr. Kessinger and reported that he was recently hospitalized at Cabell Huntington Hospital due to chest pain. Physicians ruled out a pulmonary embolus; however, Claimant's CT scan showed bilateral pneumonia. (Tr. at 155.) Hospital physicians prescribed various medications, but Claimant was not taking any, due to his inability to pay for them. Dr. Kessinger noted that Claimant had a number of indigent medications through her office; however, Claimant stated that he was unable to secure even those, because he could not afford the $10 fee. Dr. Kessinger's office made arrangements to supply Claimant with Coumadin. She advised him to manage his diabetes and hypertension with careful diet management. (Tr. at 155.)

On October 17, 2004, Claimant returned to Cabell Huntington Hospital with complaints of lower back pain that radiated into his upper back. (Tr. at 173-4.) X-rays of his lumbar spine, abdomen, and pelvis showed no acute abnormalities other than mild degenerative disc disease. (Tr. at 175, 183-4.) The examining physician recommended that Claimant follow up with John Marshall Family Practice; however, it does not appear from the record that Claimant did so. (Tr. at 178.)

On February 8, 2005, Claimant visited Lincoln Primary Care Center, and reported intermittent chest pain and heaviness for the past five (5) months. (Tr. at 190-2.) Records indicate that he used tobacco, alcohol, and marijuana. (Tr. at 191.) Claimant smoked four (4) cigars a day and drank beer. (Tr. at 192.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to properly consider his limited education, his inability to pay for his medications, and his combination of impairments. (Pl.'s Br. at 3-7.) He also argues that the ALJ did not properly analyze his pain. Id. The Commissioner responds that the ALJ complied with the law in all respects, and that his decision was supported by substantial evidence. (Def.'s Br. at 6-10.)

Claimant cites to 20 C.F.R. § 404.1564[1] and argues that his limited education under that section (10th grade) coupled with his physical ailments and inability to pay for treatment render him disabled. (Pl.'s Br. at 3-4.) He argues that the ALJ failed to consider his educational status in determining his level of disability. Id.

The ALJ's opinion notes several times that Claimant has a limited education, and acknowledges his duty to consider Claimant's level of education when determining disability. (Tr. at 30, 35, 36; Finding No. 8, tr. at 36.) The ALJ specifically directed the vocational expert to consider Claimant's limited education in forming his opinions. (Tr. at 222.) Claimant's attorney did not cross-examine the vocational expert in this area. Nor has Claimant submitted any medical evidence or test results indicating that his level of education would impact his ability to work. Even Claimant's Brief does not articulate specifically how his limited education would prevent him from performing the types of sedentary work the ALJ proposed. Accordingly, Claimant's argument that his limited education prevented him from performing the sedentary work prescribed is unsupported and unpersuasive.

Claimant's argument concerning his indigency is equally unconvincing. As the ALJ observed, Claimant was able to obtain

---

[1] Claimant makes a typographical error in citing to § 404.1664; the section applicable to education as a vocational factor is 20 C.F.R. § 404.1564.

cigars and marijuana. (Tr. at 34.) Indeed, medical records confirmed that Claimant smoked marijuana, smoked one pack of cigarettes a day for 20 years and/or four (4) cigars a day, and drank beer. (Tr. at 187, 191-2.) Meanwhile, the ALJ noted, the co-pay for Claimant's medications through the indigent program was only ten (10) dollars. (Tr. at 34, <u>citing</u> tr. at 155.) Dr. Kessinger's office repeatedly offered Claimant assistance in subscribing to this program. (Tr. at 156, 157.)

As discussed above, Dr. Thavaradhara opined that Claimant could work if he would comply with treatment and medication. (Tr. at 141-3.) The evidence herein indicates that instead of pursuing this helpful treatment at minimal cost, Claimant chose to spend his money on harmful substances. The ALJ correctly rejected Claimant's arguments as to indigency.

Claimant vaguely asserts that the ALJ failed to consider his impairments in combination. (Pl.'s Br. at 4.) He appears to rely upon Dr. Thavaradhara's opinions for support of this argument. However, while Dr. Thavaradhara acknowledged Claimant's multiple medical problems, he specifically opined that Claimant could return to productive work once he was compliant with medication and treatment. (Tr. at 143.) None of Claimant's physicians have opined that he is unable to work due to any one or more of his impairments, and he offers no other support for this argument.

The ALJ acknowledged that Claimant's history of closed head

injury, deep vein thrombosis, hypertension, diabetes, degenerative disc disease, and obesity were severe impairments. (Tr. at 32, 36.) The opinion reflects that these impairments were considered in combination and were fairly accommodated by the sedentary work restriction determined by the ALJ. (Tr. at 33, 34-5.)

Finally, Claimant argues that the ALJ failed to give due consideration to his subjective complaints of pain. (Pl.'s Br. at 5-7.) However, the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. § 416.929(c)(2005); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 33-4.)

As the ALJ observed, Claimant engages in daily activities consistent with the performance of at least sedentary work, including caring for his personal needs, watching television, washing dishes, driving, splitting wood, walking and standing, and lifting at least a gallon of milk (8 pounds). (Tr. at 33-4.) Claimant was also able to travel to Florida in 2004. (Tr. at 34.) As the ALJ noted, there is no medical evidence suggesting that Claimant was not capable of at least sedentary work; he had normal

gait, normal strength, and normal sensation; and no neurological abnormalities of his brain or spine. (Tr. at 34.) Claimant's medications were made available to him at minimal cost through indigency programs, yet he chose not to obtain them. As such, substantial evidence supported the ALJ's conclusion that Claimant is capable of sedentary work.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall

constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this written opinion and Order and to mail a copy of the same to counsel of record.

June 5, 2006
Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge